# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                    Criminal Action No. 5:15-cr-6

DUANE DAVID WILL, JR.,

      Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Duane David Will's motion to suppress evidence filed on March 3, 2014. The United States filed a response in opposition on April 7, 2015. This Court held an evidentiary hearing and argument on the motion on April 14, 2015. Will appeared in person and by his counsel Patrick E. McFarland, Esq. The United States (hereinafter "the Government") appeared by Stephen L. Vogrin, Esq. Will presented the testimony of Deputy Shawn Brooks Mayle and Deputy Zachary Allman. During the hearing, this Court admitted Defendant's exhibits 1-6 (an April 2014 criminal complaint, arrest warrant, and search warrant filed in Marshall County, West Virginia Magistrate Court, and a subsequent evidence receipt and digital forensics analysis report) and Government's exhibit 1 (an audio recording of the April 29, 2014, arrest of Defendant).

## I. INTRODUCTION

### A. Background

On February 4, 2015, Will was named in a one count indictment plus forfeiture allegations charging him with possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2). An initial appearance and arraignment were held on February 19, 2015. Will was released

on bond subject to conditions of release. Will now moves this Court to suppress all evidence seized by officers during the execution of the April 29, 2014, search warrant.

## B. The Motion

Defendant's motion to suppress evidence. ECF No. 13.

## C. Recommendation

I recommend that Defendant's motion to suppress evidence be **DENIED** because the affidavit and search warrant support a sufficient nexus between the seized items in Will's home and the alleged battery at John Marshall High School. Further, even if the executed search warrant were defective, the good faith exception and plain view doctrine would apply. Lastly, the inevitable discovery doctrine applies to the contents seized from Defendant's cell phone.

## II. FINDINGS OF FACT

On April 15, 2014, Deputy Shawn Mayle of the Marshall County, West Virginia Sheriff's Department was stationed at John Marshall High School as a resource officer. That day, Deputy Mayle was approached by a female student from the high school. The student advised Deputy Mayle that, on April 9, 2014, Defendant Will put his arms around the student and attempted to kiss her. On the date of the incident, Will was employed as a teacher at John Marshall, however, on April 15, 2014, Will was on administrative leave stemming from another incident at John Marshall. During Deputy Mayle's investigation of this alleged incident, he interviewed other potential witnesses. As a result of his investigation, Deputy Mayle filed a criminal complaint of misdemeanor battery[1] against Will and sought a search warrant for certain electronic devices in Will's home. Def.'s Ex.

---

[1] Defined under West Virginia Code § 61-2-9 as "physical contact with force capable of causing physical pain or injury to the person of another or unlawfully and intentionally causes physical pain or injury to another person . . . ."

1-2. Deputy Mayle's affidavit stated:

> On April 15, 2014, I Deputy Shawn Mayle the resource officer at John Marshall High School was made aware of a battery that had taken place at John Marshall High School. I spoke with the victim [redacted], she is a student at John Marshall High School. [Redacted] was assigned to go and take photos's for the yearbook, she was advised by the yearbook teacher to go to room 321 and take some pictures. [Redacted] felt uncomfortable going to this room because it belonged to Mr. Will, she advised me that earlier in the year when she won homecoming queen she was contacted by Mr. Will on face book and twitter and she said things that made her feel very uncomfortable and she has spent most of the year trying to avoid contact with him. [Redacted] asked her sister [redacted] to escort her to Mr. Will's room because she didn't know if there were students in there and she didn't want to be alone with him. When they got to his room they could see that there were other students in the room so they went in. [Redacted] said that Mr. Will approached them and stated "what do you need beautiful, and that I've missed you." [Redacted] stated she was embarrassed by his words and tried to ignore his comments and attempted to take some pictures of the class, Mr. Will continued and approached [redacted] and put his arms around her, trying to embrace her, as she pulled away Mr. Will attempted to kiss her, not knowing if he was trying to kiss her on the lips or not, [redacted] turned her head and his kiss landed on her cheek. Mr. Will's actions embarrassed, insulted, and made both girls feel very uncomfortable, [redacted] and her sister left the room feeling that [redacted] had been assaulted, and the actions of Mr. Will was very inappropriate, and in no way justified. This attack occurred on April 9th, 2014 at John Marshall High School, since then Mr. Will has attempted to contact [redacted] via face book and twitter, she advised me that she has not replied to any of his attempts and continues to ignore him. Mr. Will has been reported to the Board of Education by the administration at John Marshall High School for another incident that occurred at school, and since then Mr. Will has deactivated his face book account and the messaging has stopped for now.

Def.'s Ex. 2, at 14. On April 29, 2014, a Marshall County Magistrate signed an arrest warrant and authorized a search of Will's home to seize "[a]ny an all computers, hard drives, cell phones, digital media storage devices located on the property." *Id.*

Also on April 29, 2014, officers traveled to Will's home to arrest him for battery and to execute the authorized search warrant. During the suppression hearing, Deputy Zachary Allman testified that he was the ranking officer during the execution of Will's arrest warrant and search warrant. At Will's home, officers knocked on the door, and, once Will answered, Deputy Allman

3

informed him that he had a warrant for his arrest and a search warrant for his house. Pl.'s Ex. 1. Will

was arrested and told by Deputy Allman that he was "under arrest . . . And that you do have the right

to remain silent. Anything you say can and will be used against you in a court of law. You have the

right to have an attorney before any questioning. Do you understand that?"[2] *Id.* Will answered

affirmatively. Deputy Allman did not notify Will that if he could not afford an attorney, one would

be provided to him.

Next, Deputy Allman provided Will a copy of the criminal complaint, affidavit by Deputy

Mayle, and search warrant. *Id.* Deputy Allman asked Will "do you have a cell you on you?" *Id.* Will

answered "yeah." *Id.* Deputy Allman inquired if Will had a "passcode" for his cell phone. *Id.* Will

answered that he did and provided his cell phone and phone password to officers. *Id.* During the

execution of the search warrant, Deputy Allman explained to Will that:

> Apparently there was some correspondence, through the internet or text messages,
> or whatever. So what will happen with that stuff is basically we'll [inaudible]
> Facebook. Facebook keeps record of every message it's sent for like a year or so.
> And they'll extract basically every text message that you've sent and received for the
> past month, or however many months, even belated ones. Because your phone is like
> a little computer, you know? They extract all that information using what's called a
> "shell break." And the same thing with your other computers. And then they'll go
> through . . . each email and text and all that stuff one at a time to see if there's
> anything in there that's inappropriate or whatever.

*Id.*

Officers seized the following items from Will's home: (1) an Apple iPhone 4; (2) a HP

Pavilion DV6000 PC; (3) an Amazon Kindle; (4) an Apple iPad ; (5) a Dell Inspiron "X16-96072";

and (6) a Dell Inspiron 537. Def.'s Ex. 4, at 19.

During the suppression hearing, Deputy Allman testified that officers attempted to obtain

---

[2] Any transcription of the audio recording submitted by the Government in Exhibit 1 is not an official transcript.

a search warrant from Facebook, however, Will's account had been deleted and officers "had not preserved the account, which means . . . there was nothing." Nevertheless, Deputy Allman testified that there was a likelihood that relevant evidence could still be on the hard drives of Will's computers, agreeing that "just because the Facebook account was deleted with Facebook doesn't mean it was deleted on the particular person's computer." Deputy Allman also agreed that "it would be relevant to the investigation to get communications before and after an alleged battery between the victim and a potential suspect."

On April 30, 2014, officers downloaded content from Will's iPhone and iPad, and, subsequently, created a digital copy of the downloaded material. On May 15, 2014, officers downloaded content from Will's computers and provided hard drives to West Virginia State Trooper Matthew Scott Adams. Deputy Allman testified that he gave Trooper Adams a "synopsis of the case and explained what" evidence officers were looking for. Trooper Adams began his forensic examination of July 22, 2014. Def.'s Ex. 6. Trooper Adams conducted his analysis on "duplicate images of the original" hard drives provided by officers. *Id.* After his analysis, Trooper Adams turned over evidence to officers found on the hard drives along with a report. *Id.* Based on the evidence collected on the three hard drives, Will was charged with possession of child pornography on February 4, 2015.

### III. MOTION TO SUPPRESS

**A. Contentions of the Parties**

In his motion to suppress, Will argues that Deputy Mayle's affidavit provided "no factual basis to support any nexus between [Will's] home and the alleged offense of [b]attery committed at John Marshall High School." ECF No. 13 at 6. Additionally, Will contends that Deputy Mayle's

affidavit and search warrant "are so lacking in probable cause that neither the good faith exception nor plain view exceptions can save such a faulty warrant." *Id.* at 10. Lastly, Will raises that officers provided an incomplete *Miranda* warning and improperly requested the password for Will's cell phone.

The Government contends that the search warrant was supported by probable cause. Even if the search warrant were defective, the Government argues that the good faith exception to the exclusionary rule would nevertheless apply. Further, the Government believes that the officers' *Miranda* warning was sufficient, yet, the inquiry is irrelevant because Will voluntarily disclosed his cell phone password to officers.

**B. Discussion**

1. A Sufficient Nexus Existed Between the Alleged Crime of Battery and Will's Home

The Fourth Amendment of the U.S. Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV (emphasis added). Probable cause only requires "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). A magistrate who issues a search warrant must act in a neutral and detached manner, that is, he must not become "an adjunct law enforcement officer" or a "rubber stamp for the police." *United States*

*v. Leon*, 468 U.S. 897, 914 (1984) (internal quotations omitted). Yet, once a search warrant has been issued, review of the probable cause determination by the magistrate is to be shown "great deference." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990).

Courts must keep in mind "the right to 'sanctity of private dwellings,' has been held to be the right 'ordinarily afforded the most stringent Fourth Amendment protection.'" *United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 561 (1976)). Consequently, "residential searches have been upheld only where some information links the criminal activity to the defendant's residence." *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993). The Fourth Circuit has adopted the rule "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). Thus, when there is no evidence connecting criminal activity to a residence, the warrant is defective. *Lalor*, 996 F.2d at 1578. However, courts do "allow a [magistrate] to make reasonable inferences that people store contraband in their homes. But [the Fourth Circuits has] never held that a [magistrate] can make such an inference absent any facts in the affidavit linking a person to a residence." *United States v. McKenzie-Gude*, 671 F.3d 452, 459 n.2 (4th Cir. 2011) (internal citations omitted).

In the present case, Will argues that the affidavit drafted by Deputy Mayle "offered no factual basis to support any nexus" between Will's home and the alleged battery at John Marshall High School. However, the information in the probable cause affidavit for the search warrant of Will's home included: (1) Will allegedly attempted to "put his arms around [the victim], tr[ied] to embrace her, . . . [and] attempted to kiss her" before the victim turned her head away; (2) the victim

was "embarrassed" and "insulted" by the incident and felt as if she "had been assaulted"; (3) subsequent to this incident, Will attempted to contact the victim via social media; (4) the victim has refused to reply to any of Will's messages "and continues to ignore him;" and (5) at the time of the executed search warrant, Will was on administrative leave and not working at John Marshall High School. Def.'s Ex. 4, at 18. Contrary to Will's argument, evidence of battery did exist in Will's home. The affidavit directly states that, since the alleged battery, Will "attempted to contact [the victim] via face book and twitter . . . ." Def.'s Ex. 4, at 18. Because the Fourth Circuit "does allow a judge to make reasonable inferences that people store contraband in their homes" it follows naturally that a magistrate would reasonably find that Will contacted the victim, not from an office or work setting, but at home with a personal electronic device. *McKenzie-Gude*, 671 F.3d at 459 n.2; *but see United States v. Shanklin*, No. 2:12CR162, 2013 WL 6019216, at *8 (E.D. Va. Nov. 13, 2013) (finding no sufficient nexus when "none of [the victim's] statement implicate any multimedia device use, and there appear[ed] to be little or no probability that evidence of sexual battery or abduction at school could have been uncovered through a search of a home computer."). Therefore, given the great deference to the authorizing magistrate, the search warrant does support evidence of a nexus between the personal computers and cell phone in Will's home to the alleged battery at John Marshall High School.

2. The Search Warrant was not a "General Warrant" and was Executed Appropriately

Will further agues that officers were only authorized to search and seize materials relating to the alleged battery at John Marshall High School, and, consequently, the search warrant to seize items at Will's home was "unconstitutionally general." ECF No. 14 at 10. "At its core, the Fourth Amendment protects against general warrants that authorize 'exploratory rummaging in a person's

belongings . . . by requiring a particular description of the things to be seized.'" *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (quoting *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)). A warrant meets this particularity requirement if "the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).

The search warrant in this case satisfies the particularity requirement by describing the offense, place to be searched, and the items to be seized. As stated above, the search warrant in this case authorized the search and seizure of "[a]ny and all computers, hard drives, cell phones, digital media storage devices located" in Will's home. Def.'s Ex. 2, at 12. "A commonsense and realistic approach" in the interpretation of the search warrant in this case concludes that officers were to search for social media communication regarding the alleged battery at John Marshall High School. *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009). The warrant gave officers the ability to identify which computers and electronic devices may have contained the relevant information.

Because the warrant meets the particularity requirement, this Court must determine if officers appropriately executed the search warrant. "When a search is conducted pursuant to a warrant, it is limited in scope by the terms of the warrant's authorization." *Williams*, 592 F.3d at 519 (internal quotation marks omitted). Further, when a search warrant "is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant." *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982). Yet, courts should avoid a "hypertechnical" scrutiny of affidavits for search warrants because "[a]ffidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Illinois v. Gates*, 462

U.S. 213, 235 (1983) (internal quotation marks omitted). Therefore, "a commonsense and realistic approach" when analyzing search warrants is proper. *Phillips*, 588 F.3d at 223 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

"Whether seized evidence falls within the scope of a warrant's authorization must be assessed solely in light of the relation between the evidence and the terms of the warrant's authorization." *Williams*, 592 F.3d at 520-21. As addressed by the Third Circuit, "[t]he storage of information on hard drives and other digital storage devices presents distinctive difficulties for law enforcement." *United States v. Morgan*, 562 F. App'x 123, 128 (3d Cir.) *cert. denied*, 135 S. Ct. 153 (2014). Relevant evidence "can be saved under file names and in formats that conceal the contents and make the file appear innocent. The contents cannot be identified until the file is opened." *Id.* Consequently, "[b]y necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there." *United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1176 (9th Cir. 2010).

Here, the search and seizure of electronic equipment that contained evidence of communication between Will and the victim was authorized by the search warrant. Although officers discovered evidence of child pornography on Will's computer instead of evidence of communication through social media, "[c]ourts have never held that a search is overbroad merely because it results in additional criminal charges." *Phillips*, 588 F.3d at 224.

Similar to this case, the court in *United States v. Gray*, 78 F. Supp. 2d 524, 529 (E.D. Va. 1999), faced whether evidence of child pornography discovered during a search of computer files authorized by an unrelated warrant must be suppressed as beyond the scope of the warrant. In *Gray*, while searching for evidence of hacking, officers uncovered images of child pornography. The court

denied the defendant's motion to suppress evidence of the images, finding:

> In searching for the items listed in the warrant, [the agent] was entitled to examine all of defendant's files to determine whether they contained items that fell within the scope of the warrant. In the course of doing so, he inadvertently discovered evidence of child pornography, which was clearly incriminating on its face. As [the agent] was lawfully searching the "Teen" and "Tiny Teen" subdirectories pursuant to the first warrant when he saw the illegal pornography, viewing that evidence did not constitute an unreasonable search under the Fourth Amendment.

*Id.*

Like *Gray*, testimony during the suppression hearing revealed that, in reviewing the contents of a computer hard drive, Trooper Adams opened "all of the subdirectories as part of his routine search for the items listed in the warrant." *Gray*, 78 F. Supp. 2d at 527. Deputy Allman testified that, before Trooper Adams analyzed Will's hard drives, Deputy Allman briefed Trooper Adams on the synopsis of the case "and explained what exactly what [officers] were looking for." Deputy Allman testified that it was necessary to look at images stored on Will's computer because "screenshots" are frequently saved from social media conversations and stored on computers as picture files. Furthermore, a detailed analysis of Will's computer to find evidence related to battery was necessary because "the owner of a computer, who is engaged in criminal conduct on that computer, will not label his files to indicate their criminality." *Williams*, 592 F.3d at 522; *see United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) (finding computer "files containing evidence of a crime may be intermingled with millions of innocuous files . . . ."). Therefore, the search warrant was not a general warrant and the search of Will's computers was within the scope of the warrant.

Nevertheless, the plain-view doctrine would apply in this case. "[T]he plain-view doctrine authorizes warrantless seizures of incriminating evidence when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the

object itself; and (3) the object's incriminating character is immediately apparent." *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997). "These principles applied in the context of a [computer] search means that, if an agent searching files pursuant to a search warrant discovers a document that contains evidence of another crime, that document can be seized under the 'plain view' exception to the warrant requirement." *Gray*, 78 F. Supp. 2d at 528-29. "Once it is accepted that a computer search must, by implication, authorize at least a cursory review of each file on the computer, then the criteria for applying the plain-view exception are readily satisfied." *Williams*, 592 F.3d at 522. As explained above, because evidence supported that "screenshots" or other evidence of social media communication may be present on Will's computer, a cursory review of each file was permitted. Thus, the plain-view doctrine applies in this case.

3. Even if the Warrant is Void, the "Good Faith" Exception to the Exclusionary Rule Applies

Assuming arguendo that the search warrant were defective "[u]nder the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)). In other words, the good faith exception applies unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. The Supreme Court has "noted four situations in which an officer's reliance on a search warrant would not be reasonable" under the good faith exception:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;

12

(2) the magistrate wholly abandoned his detached and neutral judicial role;

(3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

(4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

*United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995) (citing *Leon*, 468 U.S. at 923). Further, an unsupported, "bare bones" affidavit will not satisfy the good faith exception to the exclusionary rule. *United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996). A bare bones affidavit is "[a]n affidavit contains only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . . ." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).

Will does not contend that the magistrate was purposefully mislead or failed to serve a neutral judicial role. Instead, it appears that Will relies on the third and fourth situations noted in *Hyppolite*, 65 F.3d at 1156. However, the undersigned finds that the affidavit supporting a search warrant was not lacking in indicia of probable cause to render an unreasonable belief in its validity. As described above, the affidavit describes an alleged battery between Will and a student. The affidavit describes that, after the battery, Will attempted to contact the student through social media. Because Will was not working, the search warrant sought computers and a cell phone from Will's residence, and not from an office or classroom.

The search warrant in this case satisfies the particularity requirement by describing the offense against Will, the place to be searched, and the items to be seized. Further, the warrant was not so facially deficient that the executing officers cannot reasonably presume it to be valid. During the suppression hearing, Deputy Allman testified that in over fifty searches, relevant computer

13

equipment is located generally "either on the person or in their home or both." According to

testimony, "almost all" of Deputy Allman's computer warrants involved a suspect's residence. Once

Will's computers were seized, Trooper Adams analyzed copies of the hard drive to examine

evidence of social media communications regarding battery. Before analyzing the hard drives,

Trooper Adams was briefed on the case and was told "what [officers] were looking for." Therefore,

based on the testimony and evidence, the officers in this case executed the search warrant in good

faith.

4. The Password to Will's Cell Phone was Lawfully Obtained

During the execution of the search warrant, Deputy Allman asked Will if he had a password

for his cell phone. Pl.'s Ex. 1. Will responded that he did and provided the password to officers.

Officers wrote the number down and continued executing the search warrant. Will contends that

Deputy Allman's request for the password to Will's phone violated his "right against

self-incrimination." ECF No. 14 at 13. Will further states that Deputy Allman provided an

incomplete *Miranda* warning, "and any information obtained [as] a result of the use of the

[password] give to Deputy Allman . . . should be suppressed . . . ." ECF No. 14 at 13.[3]

Assuming Deputy Allman's *Miranda* warning was incomplete and Will was "compelled"

to produce his cell phone password, the undersigned agrees with the Government that the inevitable

discovery doctrine applies in this matter. The search warrant in this case authorized the search and

seizure of Will's cell phone. Def.'s Ex. 2. Under the inevitable discovery doctrine, improperly seized

evidence may nevertheless be admitted "[i]f the prosecution can establish by a preponderance of the

evidence that the information ultimately or inevitably would have been discovered by lawful

---

[3] During the suppression hearing, counsel for the Defendant noted that he did not believe "any evidence" relevant to the prosecution "was derived from the iPhone."

means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). "Under the rationale underlying the exclusionary rule and its exceptions, the prosecution is not to be put in a better or worse position than it would have been if no illegality had occurred." *United States v. Freeman*, 591 F. App'x 855, 861 (11th Cir. 2014).

Evidence supports that the content of Will's cell phone would have been ultimately discovered, even without the cell phone password provided by Will. During the execution of the search warrant, Deputy Allman discussed with Will how digital forensic examinations of his computers and cell phone would involve a "shell break" that extracts data from his devices. Additionally, during the suppression hearing, Deputy Allman testified that, on May 1, 2014, officers created a digital copy of the contents of Will's cell phone. Further, digital copies were made of Will's iPad and computer hard drives. Based on this evidence, assuming that Will's cell phone password was obtained unlawfully, the preponderance of the evidence supports that the Government's forensic analysis would uncover the same content even if Will did not provide his cell phone password. Thus, the exception applies.

## V. RECOMMENDATION

In conclusion, having found that the search warrant was supported by probable cause, stated particularly the items to be seized, and executed in a reasonable manner, the undersigned recommends that the evidence of child pornography obtained in the execution of the search warrant on the Defendant's computers and other electronic media should not be suppressed and Defendant's motion to suppress, ECF No. 13, be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, by **May 13, 2015**, file with the Clerk of the Court written objections identifying the portions of the report and

recommendation to which objection is made, and the basis for such objection. A copy of such

objections should be submitted to the District Court Judge of record. Failure to timely file objections

to the report and recommendation set forth above will result in waiver of the right to appeal from

a judgment of this Court based upon such report and recommendation.

DATED: April 29, 2015                              /s/ James E. Seibert
                                                    JAMES E. SEIBERT
                                                    UNITED STATES MAGISTRATE JUDGE