**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**UNITED STATES OF AMERICA,**

    Plaintiff,

**v.**                                            **CRIMINAL NO. 5:15-CR-6
(Judge Bailey)**

**DUANE DAVID WILL, Jr.,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATIONS

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R & R") of the United States Magistrate Judge James E. Seibert [Doc. 22]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Seibert for submission of an R & R. An evidentiary hearing was held on April 14, 2015. The R & R was filed on April 29, 2015, wherein Magistrate Judge Seibert recommends that this Court deny the defendant's Motion to Suppress [Doc. 13]. The defendant timely filed his objections on May 13, 2015 [Doc. 23].[1] Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court will review those portions of the R & R to which objections were made under a *de novo* standard of review. The remaining portions will be reviewed for clear error. After reviewing the record, for the reasons set forth below, this Court adopts the Report and Recommendations.

---

[1] This Court notes the defendant submitted an Amended Objection [Doc. 24] on May 14, 2015, which does not make any substantive changes, but rather seeks to correct typographical errors as the originally submitted Objection was discovered to be a rough draft. To the extent the defendant seeks this Court's leave to amend his objections, the same is hereby GRANTED.

## I. BACKGROUND

On February 4, 2015, the defendant was named in a one count indictment plus forfeiture allegations charging him with possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(5)(B), (b)(2). [Doc. 1]. The defendant moves this Court to suppress all evidence seized by officers during the execution of the April 29, 2014, search warrant. [Doc. 13]. The search warrant authorized a search of the defendant's home to seize "[a]ny and all computers, hard drives, cell phones, digital media storage devices located on the property." Def. Ex. 2 [Doc. 21-1].

For the most part, the defendant agrees with the Findings of Fact contained in the R & R. This section will discuss the factual findings set forth in the R & R and also the facts not mentioned in the R & R, upon which the defendant relies.

### A. Facts Supporting Search Warrant

On April 15, 2014, Deputy Shawn Mayle of the Marshall County, West Virginia Sheriff's Department was stationed at John Marshall High School as a resource officer. That day, Deputy Mayle was approached by a female student from the high school. Mayle Aff., Apr. 29, 2014 [Doc. 21-1]. The student advised Deputy Mayle that, on April 9, 2014, Defendant Will, a teacher at John Marshall High School, put his arms around the student and attempted to kiss her. *Id.* During Deputy Mayle's investigation of this alleged incident, he interviewed other potential witnesses. As a result of his investigation, Deputy Mayle filed a criminal complaint of misdemeanor battery[2] against Will and sought a search warrant

---

[2] Battery, under West Virginia Code § 61-2-9, is defined as "[a]ny person who unlawfully and intentionally makes physical contact with force capable of causing physical pain or injury to the person of another or unlawfully and intentionally causes physical pain or injury to another person . . .."

2

for certain electronic devices in Will's home. Def.'s Ex. 1, 2 [Doc. 21-1]. Deputy Mayle's affidavit stated:

> On April 15, 2014, I Deputy Shawn Mayle the resource officer at John Marshall High School was made aware of a battery that had taken place at John Marshall High School. I spoke with the victim [redacted], she is a student at John Marshall High School. [Redacted] was assigned to go and take photo's for the yearbook, she was advised by the yearbook teacher to go to room 321 and take some pictures. [Redacted] felt uncomfortable going to this room because it belonged to Mr. Will, she advised me that earlier in the year when she won homecoming queen she was contacted by Mr. Will on face book and twitter and she said things that made her feel very uncomfortable and she has spent most of the year trying to avoid contact with him. [Redacted] asked her sister [redacted] to escort her to Mr. Will's room because she didn't know if there were students in there and she didn't want to be alone with him. When they got to his room they could see that there were other students in the room so they went in. [Redacted] said that Mr. Will approached them and stated "what do you need beautiful, and that I've missed you." [Redacted] stated she was embarrassed by his words and tried to ignore his comments and attempted to take some pictures of the class, Mr. Will continued and approached [redacted] and put his arms around her, trying to embrace her, as she pulled away Mr. Will attempted to kiss her, not knowing if he was trying to kiss her on the lips or not, [redacted] turned her head and his kiss landed on her cheek. Mr. Will's actions embarrassed, insulted, and made both girls feel very uncomfortable, [redacted] and her sister left the room feeling that [redacted] had been assaulted, and the actions of Mr. Will was very inappropriate, and in no way justified. This attack occurred on April 9th, 2014 at John Marshall High School, since then Mr. Will has attempted to contact [redacted] via face book and twitter, she advised me that she has not replied to any of his attempts and continues to ignore him. Mr. Will has been reported to the Board of Education by the administration at John Marshall High School for another incident that occurred at school, and since then Mr. Will has deactivated his face book account and the messaging has stopped for now.

*Id.* Officer Mayle then went to the Marshall County, West Virginia, magistrate to obtain the warrant. Based on the criminal complaint and attached affidavit, on April 29, 2014, a Marshall County Magistrate signed an arrest warrant and authorized a search of Will's home to seize "[a]ny an all computers, hard drives, cell phones, digital media storage devices located on the property." *Id.*

That same day, officers traveled to Will's home to arrest him for battery and to execute the authorized search warrant. During the suppression hearing, Deputy Zachary Allman testified that he was the ranking officer during the execution of Will's arrest warrant and search warrant. At Will's home, officers knocked on the door, and, once Will answered, Deputy Allman informed him that he had a warrant for his arrest and a search warrant for his house. DVD Audio of Search Warrant, Apr. 29, 2014, Pl.'s Ex. 1 [Doc. 21-2].

During the execution of the search warrant, Deputy Allman explained to Will that:

> Apparently there was some correspondence, through the internet or text messages, or whatever. So what will happen with that stuff is basically we'll [inaudible] Facebook. Facebook keeps record of every message it's sent for like a year or so. And they'll extract basically every text message that you've sent and received for the past month, or however many months, even belated ones. Because your phone is like a little computer, you know? They extract all that information using what's called a "shell break." And the same thing with your other computers. And then they'll go through . . . each email and text and all that stuff one at a time to see if there's anything in there that's inappropriate or whatever.

*Id.* Officers seized the following items from Will's home: (1) an Apple iPhone 4; (2) an HP Pavilion DV6000 PC; (3) an Amazon Kindle; (4) an Apple iPad; (5) a Dell Inspiron "X16-96072"; and (6) a Dell Inspiron 537. Def.'s Ex. 4 [Doc. 21-1].

On April 30, 2014, officers downloaded content from Will's iPhone and iPad, and, subsequently, created a digital copy of the downloaded material. On May 15, 2014, officers downloaded content from Will's computers and provided hard drives to West Virginia State Trooper Matthew Scott Adams. Hr'g Tr. 21, Def.'s Ex. 5 [Doc. 21-1]. Deputy Allman testified that he gave Trooper Adams a "synopsis of the case and explained what exactly we were looking for." *Id.* Trooper Adams began his forensic examination of July 22, 2014. Def.'s Ex. 6. Trooper Adams conducted his analysis on "duplicate images of the original"

4

hard drives provided by officers. *Id.* After his analysis, Trooper Adams turned over evidence to officers found on the hard drives along with a report. *Id.* Based on the evidence collected on the three hard drives, Will was charged with possession of child pornography on February 4, 2015.

**B.    Suppression Hearing Testimony**

During the hearing, the Government asked Officer Mayle why a search of Will's home for computers was justified. Specifically, Officer Mayle was asked "[w]hy were you seeking to search and seize certain computer-type equipment?" Officer Mayle replied, "[a]fter speaking with the victim, it was – I was advised that Mr. Will attempted to contact my victim through social media, so I was – just for my investigation purposes, wanted to see if that information was still in the computers, just for my – to make my case for battery stronger." Hr'g Tr. 11, April 14, 2015. Officer Mayle also testified:

> At the time of the search warrant, Mr. Will was not at work, and that's where most computers are kept, or at home in a home office, or if it's a laptop or something mobile. He was not at work at that time, so he would not have had anything in his a search of his classroom. It would have been at his residence.

*Id.*

Based upon the hearing testimony, there is no evidence that law enforcement limited their search of Will's computers and cell phone to Facebook and Twitter accounts or Will's web browsing history accessing those social media sites. Deputy Allman testified as to the process used to examine the computer files obtained during the search. The Marshall County Sheriff's Department created digital copies of the contents of Will's iPhone. *Id.* at 20. Then, Deputy Allman gave Trooper Adams the hard drives of the items seized. Deputy Allman testified that he gave Trooper Adams a "synopsis of the case and explained what

5

exactly we were looking for." *Id.* at 21. However, Deputy Allman testified "[a]cutally when we – when Sergeant Adams does the download, he just does the download. It really doesn't vary much as to what – exactly what documents we're looking for. He does an image of the hard drives pretty much the same in every case that I've worked where we've had to download a phone or a computer." *Id.* at 22.

Deputy Allman testified that officers attempted to obtain a search warrant from Facebook, however, Will's account had been deleted and officers "had not preserved the account, which means . . . there was nothing." *Id.* at 26. Nevertheless, Deputy Allman testified that there was a likelihood that relevant evidence could still be on the hard drives of Will's computers, agreeing that "just because the Facebook account was deleted with Facebook doesn't mean it was deleted on the particular person's computer." Deputy Allman also agreed that "it would be relevant to the investigation to get communications before and after an alleged battery between the victim and a potential suspect." Further, Deputy Allman testified that social media messages are often saved as images by the user taking a screen shot of the message. Hr'g Tr. 26.

## II. DISCUSSION

The defendant makes several objections to the R & R. The defendant argues that the warrant is void for two reasons: 1) it lacked probable cause and 2) it was unconstitutionally general. The defendant argues that the insufficiency of the warrant precludes the invocation of the good faith exception. Defendant also argues that, even if the warrant was valid, the officers exceeded the scope of the warrant. The following section will discuss each argument in turn.

6

A.  **Validity of Warrant**

Will attacks the validity of the warrant on two grounds. First, he argues that it lacked probable cause because it failed to identify a nexus between the designated crime of battery to the search of Will's home. Second, Will contends that the warrant did not describe the place to be searched with particularity. The Fourth Amendment's requirement that warrants "particularly describ[e] the place to be searched, and the persons or thing to be seized" is closely tied with the probable cause requirement because probable cause requires law enforcement show the magistrate that the items to be searched are connected with criminal activity.

The first issue presented is whether the magistrate acted properly in issuing the warrant for the search of computers inside Will's home. Although the defendant argues that there was no factual basis to support a nexus between the defendant's home and the alleged offense of battery, this Court disagrees.

The issuing magistrate is charged with determining, based on the totality of the circumstances, whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." ***Illinois v. Gates***, 462 U.S. 213, 238 (1983). As the R & R discusses, "the task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." ***Massachusetts v. Upton***, 466 U.S. 727, 728 (1984).

"[R]esidential searches have been upheld only where some information links the criminal activity to the defendant's residence." ***United States v. Lalor***, 996 F.2d 1578,

7

1583 (4th Cir. 1993) (citing **United States v. Williams**, 974 F.2d 480, 481–82 (4th Cir. 1992)). Magistrate Judge Seibert found that a sufficient nexus between the alleged crime of battery and the defendant's home existed. He based this finding on several facts laid out in the supporting probable cause affidavit:

> (1) Will allegedly attempted to 'put his arms around [the victim], tr[ied] to embrace her, . . . [and] attempted to kiss her' before the victim turned her head away; (2) the victim was 'embarrassed' and 'insulted' by the incident and felt as if she 'had been assaulted;' (3) subsequent to this incident, Will attempted to contact the victim via social media; (4) the victim has refused to reply to any of Will's messages 'and continues to ignore him;' and (5) at the time of the executed search warrant, Will was on administrative leave and not working at John Marshall High School.

Because the affidavit stated that the defendant used social media to contact the victim, information from the defendant's computers was relevant to the prosecution for battery. Officer Mayle testified to the relevancy of the social media communications between the defendant and victim, stating he "wanted to see if that information was still in the computers, just for my – to make my case for battery stronger." Hr'g Tr. 11.

Defendant relies on persuasive authority that can be distinguished on the facts. In the instant case, the victim's statement that Will used social media to contact her created a nexus between the crime and the items to be searched (computers and electronic devices). See **United States v. Shanklin**, No. 2:12CR-l62, 2013 WL 6019216, at *8 (E.D. Va. 2013) (holding that search of computers was not supported by probable cause because none of the supporting evidence "implicate[d] any multimedia device use . . .."); see also **Dougherty v. City of Covina**, 654 F.3d 892, 898 (9th Cir. 2011) (holding that probable cause for charges of sexual molestation did not authorize a search of the defendant's home for child pornography on defendant's computers because "[t]he affidavit contains no facts

8

tying the acts of [the defendant] as a possible child molester to his possession of child pornography.").

Further, this Court finds that the issuing magistrate could reasonably infer that these devices may be found at the defendant's home. See ***United States v. Anderson***, 851 F.2d 727, 729 (4th Cir. 1988) (holding reasonable inference that a suspect will keep firearms in home). In light of ***Anderson***, the issuing magistrate's inference that a person would typically use and keep computers at either their home or work is reasonable, and this Court will not disturb it. See ***Massachusetts v. Upton***, 466 U.S. 727, 733 (1984) ("A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.").

Even if the warrant lacked probable cause, the good faith exception precludes the use of the exclusionary rule. The ***Leon*** Court "established a good faith exception to the exclusionary rule under which evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was objectively reasonable.'" ***United States v. Doyle***, 650 F.3d 460, 467 (4th Cir. 2011) (internal quotations and citations omitted). The ***Leon*** Court identified four situations where the good faith exception would not apply:

> (1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
>
> (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in ***Lo–Ji Sales, Inc. v. New York***, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)";
>
> (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and

9

(4) if under the circumstances of the case the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*United States v. DeQuasie*, 373 F.3d 509, 519–20 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 923) (internal quotation marks omitted).

As stated above, Will argues the present case falls under situations 3 and 4. "When considering the application of the good faith exception, courts 'should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable.'" *Doyle*, 650 F.3d at 471. The good faith exception will not endorse a search that is wholly unrelated to the crime designated in the warrant. *Id.* at 472–73 (holding good faith exception not applicable when warrant sought permission to search for evidence of child pornography, but evidence in affidavit only supported child molestation). *Cf.* *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (although insufficient probable cause, upheld search of home for drugs under the good faith exception when no evidence affidavit prepared in bad faith).

This Court agrees with the R & R that the good faith exception saves any defect in the warrant. Here, the issuing magistrate was presented with an affidavit that stated a teacher (defendant) battered a student at school. This student told Deputy Mayle that the teacher contacted her via Facebook or Twitter. Deputy Allman testified that relevant computer data is generally found on the suspect's person or in their home. There are no allegations that the affidavit was prepared in bad faith or that the underlying information was unreliable.

Likewise, Will's argument that the warrant was "unconstitutionally general" also fails.

Will argues that the warrant's authorization of "any and all computers, hard drives, cell phones, digital medial storage devices . . .." was overbroad because the probable cause supported only the search for social media messages sent by Will on or after April 9, 2014. Objections 9 [Doc. 23].

The Fourth Amendment requires "a particular description of the things to be seized. This particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." **United States v. Williams**, 592 F.3d 511, 519 (4th Cir. 2010) (internal citations and quotations omitted). As discussed above and in the R & R, the supporting affidavit[3] and warrant complies with these requirements.

**B.    Scope of Warrant / Plain View Doctrine**

Finally, Will argues that, even in the event the search was lawful by either a valid warrant or under the good faith exception, law enforcement exceeded the scope of the warrant's authorization.[4] Will argues that the search warrant only authorized a limited search of his computers to social media messages sent by Will on or after April 9, 2014—not a search for child pornography. Objections 9 [Doc. 23].

"A search conducted pursuant to a warrant is limited in scope by the terms of the warrant's authorization." **United States v. Phillips**, 588 F.3d 218, 223 (4th Cir. 2009). Yet,

---

   [3]    The affidavit was incorporated into the search warrant. [Doc. 21-1].

   [4]    Although closely related to Will's previous argument that the warrant fails for its lack of particularity, this issue will be examined separately because the good faith exception will not save a warrant that is improperly executed.   See **United States v. Angelos**, 433 F.3d 738, 746 (10th Cir. 2006).

11

courts consistently hold that "a search warrant is not to be assessed in a hypertechnical manner." *United States v. Srivastava*, 540 F.3d 277, 289 (4th Cir. 2008) (holding that law enforcement did not exceed scope of warrant after seizing personal records when warrant identified only business records).

This Court finds that *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010), is dispositive. In *Williams*, after a church received several e-mail messages discussing molestation of boys that attended the church, the police investigated and determined the source of at least one email. *Id.* at 515. A detective submitted an affidavit for a warrant to search the defendant's home, which contained a description of the emails and stated that he believed probable cause existed for violations of two state crimes, including 1) prohibiting threatening communications to persons at elementary schools and 2) harassment by computer.[5] The magistrate judge issued the warrant that authorized the search and seizure of "[a]ny and all computer systems and digital storage media . . .." *Id.* The search of the computers revealed several images of child pornography. Child pornography was also found on a dvd seized from the home. *Id.* at 516.

The *Williams* Court addressed two issues: "(1) whether the government's search for and seizure of child pornography fell within the scope of the warrant's authorization; and (2) whether the evidence of child pornography was in any event properly seized under the plain-view exception to the warrant requirement." *Id.* at 519. The *Williams* Court upheld the search and seizure under both.

"Whether seized evidence falls within the scope of the warrant's authorization must

---

[5] For simplicity, this Court has abbreviated the names of the state laws.

be assessed solely in light of the relation between the evidence and the terms of the warrant's authorization." *Id.* at 520– 21 (internal citations omitted). The Fourth Circuit held that law enforcement in ***Williams*** acted properly, reasoning that "[w]hile the warrant did not explicitly authorize a search for child pornography, it did authorize a search for instrumentalities for computer harassment . . .."

Will argues that the scope of the warrant was limited to a search related the designated offense— battery. Unlike ***Williams***, the connection between the designated offense of battery and child pornography is more attenuated. In ***Williams***, the designated offense required the Government to prove the defendant used the computer to harass the victim. Here, the only connection between the alleged battery and the defendant's computer was the use of a device to contact the victim via social media. Officer Mayle testified that Will's computer and other devices would have contained only limited relevant evidence to battery:

> Q. And you said that he Mr. Will contacted the alleged victim through Twitter or Facebook?
> A. She was unclear. She said one of the two.
> Q. I understand. But it was either Facebook or Twitter?
> A. Social media, yes, sir.
> Q. So there was no reason to look for anything relating to a battery charge or anything other than Facebook or Twitter, correct?
>
> * * *
>
> Q. I said if you were just trying to substantiate the charge of battery and that he may have had some contact with her over Facebook or Twitter, that's all you really needed to look to substantiate those charges of battery, correct?
> A. Social media, yeah.
>
> * * *
>
> Q. And so there would be no evidence of the crime of battery prior to April 9 of 2014, would there?
> A. I don't believe so.

Hr'g Tr. 14.

Although the connection between images for child pornography and the designated offense is not as strong as in **Williams**, this Court further finds that, the search of the defendant's computers for images of child pornography falls under the plain view exception to the warrant requirement. In addition to holding that the execution of the warrant was valid, the **Williams** Court also held that the search and seizure of the images fell within the plain view exception.

Will argues that law enforcement should have restricted their search to files dated April 9, 2014, or later. Yet, this argument fails "because the designation or labeling of files on a computer can easily be manipulated to hide their substance." **Williams**, 592 F.3d at 522. As in **Williams**, the three requirements for the plain view exception are met. As explained above, law enforcement was authorized to search Will's computers and other devices; thus, law enforcement was authorized to "open and cursorily view each file." Third, "when the officer comes upon child pornography, it become 'immediately apparent' that its possession by the computer's owner is illegal and incriminating." **Id.** (citing **Horton v. California**, 496 U.S. 128 136 (1990)).

### III.  CONCLUSION

For the foregoing reasons, this Court adopts the Report and Recommendation **[Doc. 22]**. The defendant's Objections **[Docs. 23, 24]** are **OVERRULED** and the defendant's Motion to Suppress **[Doc. 13]** is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

DATED: June 19, 2015.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE